Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8262 | **DATE** | JUNE 26, 2002 |
| **CASE TITLE** | ELVIRA SISTO v. AMERITECH SICKNESS AND ACCIDENT DISABILITY BENEFIT PLAN, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for **JULY 31, 2002 at 11:00 a.m.**
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion to strike [24] is denied. Plaintiff's motion for preliminary injunction [27] is denied. All discovery is to be completed by July 30, 2002.
(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 2 7 2002 | |
| | Notified counsel by telephone. | date docketed | 44 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| cw | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELVIRA SISTO,
        Plaintiff,

v.                        No. 01 C 8262

AMERITECH SICKNESS AND
ACCIDENT DISABILITY BENEFIT
PLAN and AMERITECH LONG TERM
DISABILITY PLAN,
        Defendants.

DOCKETED
JUN 27 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Elvira Sisto is a former employee of SBC/Ameritech. Plaintiff's Amended Complaint was dismissed and she was granted leave to file an amendment. See Sisto v. SBC Ameritech, 2002 WL 448993 (N.D. Ill. March 22, 2002).[1] Named as defendants in the Second Amended Complaint (the "Complaint") are the Ameritech Sickness and Accident Disability Plan (the "SAD

---

[1] This case was originally filed in state court in September 2001 and named as defendants SBC/Ameritech and Sedgewick James of Illinois, which allegedly administers certain employee benefit plans of SBC/Ameritech. On January 9, 2002, plaintiff filed her Amended Complaint, which added IBEW Local No. 21 as a defendant, the union that allegedly represented plaintiff in her employment at SBC/Ameritech. Following the ruling on certain defendants' motion to dismiss, plaintiff filed the presently pending Second Amended Complaint on April 8, 2002.

Plan")[2] and the Ameritech Long Term Disability Plan (the "LTD Plan").[3] Plaintiff alleges the following in the Complaint. Plaintiff suffers from herniated discs in her mid-back, aggravations of lower or lumbar spine disc, obesity, diabetes, and hyperthyroidism.[4] In October 1999, plaintiff slipped at work and injured her back. Plaintiff received worker's compensation benefits for the medical care for this injury. As of that time, she was not losing time from work and therefore received no compensation for lost wages. It is further alleged that plaintiff was "placed . . . on workers compensation benefits, from July 31, 2000 through November 3, 2001."[5] On May 23, 2001, plaintiff was informed that her STD benefits would expire on August 5, 2001, at which point her employment with SBC/Ameritech would expire. She was also informed that she might thereafter be eligible for LTD benefits and was advised to submit materials for the evaluation of her qualification for LTD benefits. Plaintiff

---

[2]The SAD Plan provides both sickness disability benefits and accidental disability benefits depending on the source of the disability. Jointly, the two types of benefits available under the SAD Plan will be referred to as "STD benefits," i.e., short term disability benefits.

[3]The benefits available under the LTD Plan will be referred to as "LTD benefits."

[4]Although not mentioned in the body of the Complaint, attachments also indicate that plaintiff suffers from carpal tunnel syndrome in both arms.

[5]Plaintiff apparently means that she was receiving compensation for lost work time during this time period.

wrote to the benefits administrator that she was then receiving worker's compensation benefits, not STD benefits. Shortly thereafter, plaintiff was awarded social security disability benefits from the federal government. With a letter dated August 31, 2001, plaintiff was provided with papers to apply for COBRA medical coverage. This letter referred to her August 5, 2001 termination of employment. In a letter dated September 14, 2001, plaintiff was informed that she was denied LTD benefits because her functional capacity could not be determined in that she failed to appear for two scheduled appointments for a functional capacity test by a physiatrist. Plaintiff appealed this determination and the denial of benefits was upheld.[6]

The precise nature of plaintiff's claim is not clear. At one point, she states that her employment should not have been terminated because she was on worker's compensation, not STD benefits. On the other hand, she claims she is entitled to LTD benefits. It appears that plaintiff primarily claims she was improperly denied LTD benefits by the LTD Plan. As such, her claim is one under the Employee Income Retirement Security Act of 1974. See 29 U.S.C. § 1132(a)(1)(B). Alternatively, plaintiff apparently contends she is entitled to STD benefits from the SAD Plan. Plaintiff also claims that she should still be entitled to

---

[6]The denial is dated December 12, 2001, after this action was instituted, but before the LTD Plan was made a party to this lawsuit.

medical benefits as either an LTD benefits recipient or as a current employee on disability leave. Therefore, she also contends that she should not be required to purchase COBRA coverage in order to have medical coverage.

On April 22, 2002, plaintiff filed a motion for preliminary injunction which she presented in court on April 24, 2002. In this motion, she alleges she was "terminated from her employment on August 5, 2001 while receiving temporary total disability benefits, synonymous with workers compensation benefits." It is also alleged that the Social Security Administration granted her permanent and total disability benefits in 2001, but that she has to wait 24 months from that date before she is eligible for Medicare. It is further alleged that plaintiff sent checks for COBRA coverage that were never cashed and that she was informed in April 2002 that her COBRA medical coverage would be cancelled unless she paid overdue premiums of $2,411.84. Plaintiff further alleges that she is without sufficient financial means since her worker's compensation benefits were discontinued and LTD benefits were denied. She alleges that she is at risk of losing her life if her medical coverage is discontinued. Plaintiff requests a preliminary injunction without identifying the nature of the relief sought. In her reply, plaintiff clarifies that she is

requesting a temporary award of LTD benefits that would include medical coverage.[7]

In ruling on plaintiff's motion for preliminary injunction, this court applies a "sliding scale approach."

> A party seeking to obtain a preliminary injunction must demonstrate: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. See Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir. 1992). If the court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the non-moving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. See Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 314 (7th Cir. 1994). Finally, the court must consider the public interest (non-parties) in denying or granting the injunction. Id. The court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. Abbott Labs., 971 F.2d at 12. This process involves engaging in what we term the sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. Id. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." Id.

---

[7]Defendants move to strike the motion for a preliminary injunction on the ground that plaintiff seeks a continuation of COBRA coverage, which would come from the employer, not the two benefit plans that are defendants in this case. Since plaintiff has clarified that she is seeking temporary LTD benefits, no basis exists for striking the motion.

- 5 -

Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895-96 (7th Cir. 2001).

Defendants contend that plaintiff cannot be entitled to preliminary relief because she is seeking affirmative relief, the temporary award of benefits, not the maintenance of the status quo. Preliminary injunctions, however, are not so limited; mandatory preliminary injunctions requiring an affirmative act by the defendant may be granted under certain circumstances. However, such relief is to be "cautiously viewed and sparingly issued." Graham v. Medical Mutual of Ohio, 130 F.3d 293, 295 (7th Cir. 1997) (quoting Jordan v. Wolke, 593 F.2d 772, 774 (7th Cir. 1978)). It will only be granted "upon the clearest equitable grounds." Id. (quoting W.A. Mack, Inc. v. General Motors Corp., 260 F.2d 886, 890 (7th Cir. 1958)).

Defendants also contend that relief cannot possibly be appropriate because plaintiff is essentially seeking the payment of money, which defendants contend can never constitute irreparable harm. However, there are situations where monetary damages at a later point in time will not suffice and therefore preliminary monetary relief may be appropriate. See Brown v. Callahan, 979 F. Supp. 1357, 1362 (D. Kan. 1997) (irreparable harm for preliminary award of disability payments satisfied by showing that the plaintiff was unable to pay for shelter and food, had to forego medicine he could not afford, and had to miss

doctor appointments because he could not afford transportation); IXL Inc. v. AdOutlet.Com, Inc., 2001 WL 315219 *13 (N.D. Ill. March 29, 2001) (payments necessary to prevent a business from going under). Compare also Graham, 130 F.3d at 296-97 (denial of insurance coverage for alternative cancer treatment that plaintiff could not otherwise afford to purchase did not constitute irreparable harm because it could not be shown that the alternative treatment was more efficacious; no suggestion that it could not be irreparable harm because the claim only involved the payment of money for medical treatment). Defendants cite Davis v. Precoat Metals, 2002 WL 461570 (N.D. Ill. Feb. 22, 2002), which involved a request for preliminary relief requiring the defendant to pay contractual severance benefits that had been designated to be used to pay for COBRA coverage. That case, however, only holds that monetary loss alone cannot constitute irreparable harm. There was no indication that the plaintiffs did not otherwise have adequate funds to pay for the COBRA coverage or that any plaintiff had significant health risks should he or she lose coverage. See id. at *2.

One of the requirements for obtaining preliminary relief is that plaintiff must satisfy her burden of showing that she has some likelihood of success on the merits. Re/Max North Central, Inc. v. Cook, 272 F.3d 424, 429 (7th Cir. 2001); Ty, Inc., 237 F.3d at 895. The "minimum threshold for likelihood of

success . . . is a low one: '[i]t is enough that the plaintiff's chances are better than negligible. . . .'" Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999) (quoting Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 387 (7th Cir. 1984)). Accord Ty, Inc., 237 F.3d at 897.

Attached as Exhibit 10 to the Complaint is a copy of the LTD Plan. It includes a provision that the Ameritech Employees' Benefit Committee (the "Committee") is the final review committee for benefits claims that have been denied. LTD Plan § 4(e). It further provides: "The Committee has full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with Plan terms. The Committee shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of the Committee shall not be subject to further review." Id. § 4(f).

Because the Committee had discretion in making the determination as to plaintiff's eligibility for LTD benefits, the denial of those benefits is subject to arbitrary and capricious review. Hess v. Hartford Life & Accident Insurance Co., 274 F.3d 456, 461 (7th Cir. 2001).

> This is, of course, a deferential standard of review. Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) "it is possible to offer a reasoned explanation, based on the

evidence, for a particular outcome," (2) the
decision "is based on a reasonable explanation
of relevant plan documents," or (3) the
administrator "has based its decision on a
consideration of the relevant factors that
encompass the important aspects of the problem."
Exbom v. Central States, Southeast and Southwest
Areas Health and Welfare Fund, 900 F.2d 1138,
1142-43 (7th Cir. 1990) (citations omitted).
Nevertheless, "[d]eferential review is not no
review," and "deference need not be abject."
Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir.
1996). In some cases, the plain language or
structure of the plan or simple common sense will
require the court to pronounce an administrator's
determination arbitrary and capricious. Id.

Id.

Appendix A of the LTD Plan defines disability for non-salaried employees such as plaintiff.

> "Disability" or "Disabled" immediately following
> the Waiting Period shall mean an illness or
> injury, other than accidental injury arising out
> of and in the course of employment by the
> Company, or a Participating Company, supported by
> objective medical documentation, that prevents
> the Eligible Employee from engaging in any
> occupation or employment (with reasonable
> accommodation as determined by the Company or its
> delegate), for which the Eligible Employee is
> qualified, or may reasonably become qualified,
> based on training, education or experience. An
> employee shall continue to be considered disabled
> if prevented by reason of such illness or injury,
> supported by objective medical documentation,
> from working at a job which pays wages which,
> when combined with benefits payable from the
> Plan, equal less than 75% of the Eligible
> Employee's Base Pay at the time the Disability
> occurred.

Section 6.4 of the LTD Plan provides:

> A Disabled Eligible Employee will not be entitled to benefits if he or she declines to submit to such examination by a physician chosen by the Committee, as the Company may deem necessary to ascertain the Eligible Employee's condition. If an Eligible Employee fails to provide proper information respecting his or her condition, fails to furnish objective medical documentation of such condition or fails to follow a medically credible treatment plan, reasonably designed (where practicable) to effect the Eligible Employee's recovery and return to work, Plan benefits are not payable.

On appeal, the Committee[8] found that plaintiff had shown that she had medical conditions, but that she was not entitled to benefits in that she had failed to appear for two appointments for a functional capacity evaluation and therefore failed to show that she was unable to perform any occupation or employment for which she may have been qualified or reasonably been able to be qualified.

> Since the medical documentation submitted contained limited clinical findings and the absence of functional limitations, restrictions, and current work capacity, the long term disability case manager arranged a functional capacity evaluation with a physiatrist to assess Ms. Sisto's current level of functioning and work capacity. Unfortunately, Ms. Sisto did not comply with the request for a functional capacity evaluation. Thus a second functional capacity

---

[8]The decision attached to plaintiff's Complaint as Exhibit 12 was made by the SBC Quality Review Unit. Section 2.2 of the Plan defines "Committee" as also meaning a subcommittee or duly authorized delegate. Based on the allegations of the Complaint, Exhibit 12 is the final decision of the Committee.

> evaluation was scheduled and again, Ms. Sisto did
> not comply with the request. According to the
> terms of the Ameritech Long Term Disability Plan:
>> "A Disabled Eligible Employee will not be
>> entitled to benefits if he or she declines
>> to submit to such examination made by a
>> physician chosen by the Committee, as the
>> Company may deem necessary to ascertain
>> the Eligible Employee's Condition."
>
> Moreover, Ms. Sisto was notified in writing
> that "failure to show up for this examination
> will result in denial of your Long Term
> Disability Benefits."
>
> The medical evidence does verify the
> presence of multiple medical conditions and the
> need for treatment, however the medical
> information provided does not verify Ms. Sisto's
> inability to perform any occupation.
>
> Although some findings on examination are
> evident, none are documented to be so severe as
> to prevent your client from working at any
> occupation or employment for which your client is
> qualified or may reasonably become qualified
> based on training, education and experience from
> August 6, 2001.
>
> Moreover, it is questionable if Ms. Sisto
> is entitled to long term disability benefits
> pursuant to the provisions of the Ameritech Long
> Term Disability Plan.

Plaintiff makes reference to only needing to show that she could not perform her regular work. The LTD Plan's definition of disability, however, is clear that she must also be unable to perform certain other work for which she may be qualified. The LTD Plan's request for a functional capacity evaluation was permitted under the LTD Plan and the request was not unreasonable or arbitrary. There is no allegation in the Complaint that plaintiff did appear for a functional capacity evaluation. The only related contention in the Complaint or

other pleadings is plaintiff's allegation that post-surgery recovery precluded her participation in such an evaluation. See 2d Am. Compl. ¶ 47(c) ("The Administrators, knew or should have known, that Sisto was not to be involved in any functional capacity tests without surgical clearance, based on Dr. Muellner's report of 4-3-01, as it was copied to their retained rehab nurse, and included in their removal petition to this Honorable Court."). However, the April 3, 2001 letter is attached as Exhibit 3 to the Complaint. That letter contains no such limitation. The only statement referring to a limitation is the statement that: "if [plaintiff] or her treating physicians believe further work and/or surgery is necessary, she would not be appropriate for interdisciplinary rehabilitation until that is accomplished." This is a limitation on rehabilitative treatment, not on any examination, and even this limitation is conditioned on further findings.

LTD benefits were denied because plaintiff did not appear for a functional capacity evaluation and therefore failed to show that she could not perform work for which she might reasonably be qualified. Plaintiff does not deny that this is true. Under the terms of the LTD Plan, that was a sufficient basis for denying LTD benefits. Therefore, the denial of LTD benefits could not possibly be found to be arbitrary and capricious. Therefore, on the record now before the court, plaintiff has not met her burden

of even a minimal showing of some likelihood of success on the merits of her claim that she is entitled to LTD benefits. For this reason, she cannot be entitled to preliminary injunctive relief temporarily requiring that she be provided with LTD benefits, including medical coverage.

Alternatively, plaintiff contends she is entitled to STD benefits. Like the LTD Plan, the definition of disability under the SAD Plan[9] is not limited to inability to perform one's last position. However, the other positions to be considered are not as broad as under the LTD Plan. The SAD Plan only requires that the employee be unable to perform other positions assigned by the employer. There is, however, no indication that plaintiff was assigned to another position so this additional provision does not come into play.

> "Disability" or "Disabled" during the period of 52 weeks immediately following the Waiting Period shall mean a sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodation (as determined by the Company or its delegate), or any other job assigned by the Company or Participating Company for which the Eligible Employee is qualified with or without reasonable accommodation (as determined by the Company or its delegate). For the purposes of this Plan, disabilities associated with pregnancy shall be considered disabilities due to sickness.

---

[9]The SAD Plan is provided as Exhibit 9 to the Complaint.

SAD Plan § 2.4.  The issue would be whether plaintiff's medical conditions prevented her from performing the duties of her last position.[10]

At most, sickness disability benefits are payable for 52 weeks following a one-week waiting period.  See SAD Plan § 3.2.  Apparently, accidental disability benefits are also limited to a maximum of 52 weeks following a one-week waiting period.  Handbook at 11, 14.[11]  Thus, assuming plaintiff was disabled when she stopped working on July 30, 2000, her eligibility period for STD benefits began one week later on August 6, 2000 and the 52-week maximum period would have expired on August 5, 2001, which is consistent with the May 23, 2001 letter to plaintiff.

---

[10]Under section 3.1(a) of the SAD Plan, sickness disability benefits are not available for on-the-job injuries.  Accidental disability benefits apparently are available for on-the-job injuries, but Exhibit 9 is missing two pages (6 and 8) of the SAD Plan concerning such benefits, so it is unclear what all the applicable provisions are.  See SAD Plan § 4.  See also "Using the Ameritech Non-Management Disability Plan Handbook" (2d Am. Compl. Exh. 11) ("Handbook").  In her reply in support of the preliminary injunction motion (Docket Item 35), plaintiff contends her back condition is entirely related to an on-the-job injury.

[11]The page of the SAD Plan containing the benefit period is missing from Exh. 10.  Also, the precise period applicable to plaintiff is unknown since there is no allegation as to how long she worked for SBC/Ameritech.  In ¶ 33 of the Complaint, plaintiff quotes a different provision regarding periods of benefits.  That provision, however, is limited to employees of Ameritech Information Systems who are members of IBEW Locals 336 and 399.  See SAD Plan App. A (page 18).  Plaintiff, however, is alleged to be a member of IBEW Local 21.  The provisions in Appendix A do not apply to plaintiff.

The SAD Plan further provides that STD benefits are reduced by the amount of worker's compensation benefits being received. SAD Plan § 5.16. See also Handbook at 12.[12] Thus, to the extent plaintiff qualified for STD benefits from July 6, 2000 through August 5, 2001, she would have received no additional amount for STD benefits if the amount of STD benefits were less than the amount of worker's compensation she was then receiving.[13]

On the facts before the court, plaintiff would have qualified for STD benefits at the same time she was receiving worker's compensation benefits. No facts are alleged that the amount of benefits plaintiff was receiving during the pertinent time period were less than the amount of STD benefits for which she would have qualified. The time period for which plaintiff qualified for STD benefits has expired and there is no indication that she received an underpayment during that time period. Therefore, plaintiff has no possibility of success on the merits of her alternative claim that she is presently entitled to STD benefits, nor is there any indication of possible success on the

---

[12]The copy of the Handbook provided as Exhibit 11 of the Complaint has page 12 out of order. Page 12 can be found after page 19.

[13]No information is provided as to the amount of worker's compensation or STD benefits plaintiff was or would have been entitled to receive.

merits of a claim that she was underpaid STD benefits during the time period that she was eligible.

There is also another reason why plaintiff's STD benefits claim lacks merit. Like the LTD Plan, the SAD Plan provides the Committee with the discretion to determine eligibility for benefits and requires that participants appeal any denial of benefits to the Committee. See SAD Plan §§ 2.2, 6.[ ](e)-(g).[14] Plaintiff does not allege nor in any way indicate that she appealed the denial of any STD benefits. Therefore, any present claim for STD benefits would fail due to failure to exhaust administrative remedies, see Gallegos v. Mt. Sinai Medical Center, 210 F.3d 803, 807-08 (7th Cir.), cert. denied, 531 U.S. 827 (2000); Ames v. American National Can Co., 170 F.3d 751, 756-57 (7th Cir. 1999), Bahnaman v. Lucent Technologies, Inc., 2002 WL 774109 *3 (N.D. Ill. April 26, 2002), or due to waiver because the claim was not first presented in administrative proceedings, see Lindemann v. Mobil Oil Corp., 79 F.3d 647, 649 (7th Cir. 1996); Bahnaman, 2002 WL 774109 at *3; Doyle v. Local 25, SEIU, 1999 WL 1044206 *8 (N.D. Ill. Nov. 9, 1999).

---

[14]Subsections (e) through (g) can be found on page 17 of the SAD Plan. The precise number for the section cannot be cited because the copy of the SAD Plan that was provided as Exhibit 9 of the Complaint is missing page 16.

Because plaintiff has not met her burden of showing some likelihood of success on the merits, she cannot be entitled to a preliminary injunction requiring the temporary provision of LTD or STD benefits. Therefore, it is unnecessary to consider the other requirements for preliminary relief. The court does not take lightly the contention that the denial of relief is potentially life threatening. It would, nevertheless be inappropriate to require either of the defendant benefit funds to provide money plaintiff may need for survival when, on the facts before the court, there is no likelihood of success on a claim against defendants. Moreover, the contention of a life threatening loss of medical care is unsupported.

In the preliminary injunction motion, plaintiff asserts that she "is on approximately 15 medications to control her multiple conditions of ill-being, irreparable damage could be done to Ms. Sisto, including loss of life, unless there is a speedy resolution of the issues before this court, and her group insurance being terminated, and she being destitute financially." While there are medical records supporting that plaintiff has diabetes and hyperthyroidism,[15] there is no statement from a physician supporting that plaintiff is at risk of losing medication that is essential to her life.

---

[15]Plaintiff apparently is not contending that her back condition or carpal tunnel syndrome is life threatening.

Plaintiff makes reference to receiving certain advances for worker's compensation benefits. Defendants represent that the advance was $11,790 paid in February 2002. Therefore, it appears plaintiff had or continues to have to keep her COBRA coverage in place yet she has not chosen to do so.[16] That fact raises great doubt as to plaintiff's assertion of a life-threatening loss of medical coverage. Additionally, it is possible that plaintiff will soon have her worker's compensation benefits reinstated, which would include medical coverage. On the record before this court, plaintiff has not made a showing that she will suffer irreparable harm if she is not soon provided LTD or STD benefits. This would be another ground for denying preliminary relief.

Because plaintiff has not alleged facts supporting that she has some likelihood of success on the merits of the relief she seeks, she is not entitled to a preliminary injunction. It is also considered that she has not submitted any document to support her conclusory allegation of irreparable harm and other information before the court indicates she may not be facing

---

[16] According to records and a declaration provided by defendant, in February 2002, plaintiff sent a check to cover the amount of overdue COBRA premiums. However, before the check could be so applied, plaintiff stopped payment on the check.

irreparable harm. Additionally, it is certainly apparent that plaintiff has not made the clear showing that would be necessary to obtain the mandatory relief that she seeks. However, because plaintiff may be under severe restraints if this case is not promptly resolved and because it is possible that a more focused and developed presentation might reveal a possibility of success on the merits of the pending or some other related claim, a short schedule will be set for the completion of discovery. The parties shall act expeditiously in resolving discovery and getting to the merits of this case, either through summary judgment or by trial. It would appear that the parties should already be aware of most of the pertinent evidence, particularly since, as it now stands, this case involves review of an established record. All discovery is to be completed by July 30, 2002.

IT IS THEREFORE ORDERED that defendants' motion to strike [24] is denied. Plaintiff's motion for preliminary injunction [27] is denied. All discovery is to be completed by July 30, 2002. Status hearing set for July 31, 2002 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JUNE 26, 2002