# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 8262 | DATE | OCTOBER 30, 2003 |
| CASE TITLE | ELVIRA SISTO v. AMERITECH SICKNESS AND ACCIDENT DISABILITY BENEFIT PLAN, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendants' motion to strike [84] is granted in part and denied in part. Defendants' motion for summary judgment [62] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.**

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | 3 number of notices | | |
| ✓ | Notices mailed by judge's staff. | OCT 31 2003 date docketed | | **87** |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | aw docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 10/30/2003 date mailed notice | | |
| cw | courtroom deputy's initials | mqm | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
03 OCT 31 AM 9:02
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELVIRA SISTO,                        )
                                     )
                 Plaintiff,          )
                                     )
        v.                           )      No. 01 C 8262
                                     )
AMERITECH SICKNESS AND ACCIDENT      )
DISABILITY BENEFIT PLAN and          )
AMERITECH LONG TERM DISABILITY       )
PLAN,                                )
                 Defendants.         )

DOCKETED
OCT 3 1 2003

## MEMORANDUM OPINION AND ORDER

        This case is brought under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.
Plaintiff Elvira Sisto is a former employee of SBC/Ameritech.  As
an employee, she was a participant in the two benefit plans that
are named as defendants, the Ameritech Sickness and Accident
Disability Plan (the "SAD Plan") and the Ameritech Long Term
Disability Plan (the "LTD Plan").  The SAD Plan provides two
types of disability benefits ("SAD Benefits"), sickness
disability benefits ("SD Benefits") and accident disability
benefits ("AD Benefits").  The LTD Plan provides long-term
disability benefits ("LTD Benefits").

        On October 27, 1999, plaintiff was a 49-year old female
employed as a customer service representative.  Plaintiff's

duties were sedentary in nature, sitting most of the day and during overtime hours, taking service calls from Ameritech customers, and entering data on a keyboard into a computer. Her shift assignment started at 8:00 a.m., generally, Monday through Friday. Plaintiff suffered injuries when she fell in the washroom at her place of employment. She returned to work in January 2000. However, due to continuing complications, by the end of July 2000 plaintiff stopped working. Plaintiff suffers from disc disease, diabetes, obesity, and other medical conditions. For present purposes, defendants do not dispute that at least some of the pertinent medical conditions were caused by the October 1999 washroom fall.

For a period of time, plaintiff received Worker's Compensation benefits and SD Benefits. In the present lawsuit, plaintiff contends the SAD Plan should have awarded her AD Benefits, which would have been higher payments than the SD Benefits and not limited to one year. In 2001, plaintiff was discharged and the LTD Plan did not award her LTD Benefits. Plaintiff contends the LTD Plan should have found that she qualified for LTD Benefits.

Presently pending is defendants' motion for summary judgment. The SAD Plan contends that plaintiff waived any claim for AD Benefits by failing to present such a claim through the applicable administrative process. Alternatively, the SAD Plan

contends that it was proper to deny AD Benefits because the injuries were not work injuries, as defined in the Plan, and the SAD Plan's decision not to award AD Benefits based on that ground was not arbitrary and capricious. The LTD Plan contends that plaintiff did not qualify for LTD Benefits because it was not shown that plaintiff is disabled from performing all work and because plaintiff failed to appear for certain medical examinations. The LTD Plan further contends that the denial of LTD Benefits on those grounds was not arbitrary and capricious.

Both Plans provided that the Ameritech Employees' Benefits Committee (the "Committee") is the final review committee for benefits claims and that the Committee has full discretionary authority to determine eligibility for and entitlement to benefits. As permitted by the terms of each Plan, the Committee has delegated its appeal responsibilities to the SBC Quality Review Unit of Sedgewick CMS, which in turn has delegated its authority to Appeal Specialists. Plaintiff concedes that she can only be entitled to relief if one or both of the decisions to deny benefits was arbitrary and capricious. See Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir. 1997); Sisto v. SAD Plan, 2002 WL 1400283 *3-4, 7 (N.D. Ill. June 27, 2002) ("Sisto II").

> This is, of course, a deferential standard of
> review. Under the arbitrary and capricious
> standard, a plan administrator's decision should
> not be overturned as long as (1) "it is possible

> to offer a reasoned explanation, based on the
> evidence, for a particular outcome," (2) the
> decision "is based on a reasonable explanation
> of relevant plan documents," or (3) the
> administrator "has based its decision on a
> consideration of the relevant factors that
> encompass the important aspects of the problem."
> Exbom v. Central States, Southeast and Southwest
> Areas Health and Welfare Fund, 900 F.2d 1138,
> 1142-43 (7th Cir. 1990) (citations omitted).
> Nevertheless, "[d]eferential review is not no
> review," and "deference need not be abject."
> Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir.
> 1996). In some cases, the plain language or
> structure of the plan or simple common sense will
> require the court to pronounce an administrator's
> determination arbitrary and capricious. Id.

Hess v. Hartford Life & Accident Insurance Co., 274 F.3d 456, 461

(7th Cir. 2001).

Under arbitrary and capricious review, review of a plan's

decision is generally limited to evidence or information that was

before the reviewing body. Id. at 462; Perlman v. Swiss Bank

Corp. Comprehensive Disability Protection Plan, 195 F.3d 975,

982 (7th Cir. 1999); Bahnaman v. Lucent Technologies, Inc.,

219 F. Supp. 2d 921, 925 (N.D. Ill. 2002). Although defendants'

motion is a summary judgment motion, it is actually administra-

tive review of the Plans' decisions with the composition of the

administrative records being the essential uncontested fact.

Evidence that was outside the administrative record is only

appropriate to consider if it goes to procedural issues such as

exhaustion, in which case the usual summary judgment rules would

be applied in determining if there are any material factual

disputes.  See Wilkins v. Baptist Healthcare System, Inc., 150
F.3d 609, 619 (6th Cir. 1998); Eriksen v. Metropolitan Life
Insurance Co., 39 F. Supp. 2d 864, 866 n.2 (E.D. Mich. 1999).
Cf. Perlman, 195 F.3d at 982 (outside facts could be considered
if a Plan was accused of not doing what it said it did).
Defendants have moved to strike certain aspects of plaintiff's
Rule 56.1 Statement and accompanying exhibits, contending
plaintiff improperly relies on evidence outside the
administrative record and inadmissible evidentiary materials.
This bench disfavors the filing of motions to strike along with
summary judgment motions and such practice is contrary to this
bench's case management procedures that are posted on the court's
Website.  See Sphere Drake Ins. Ltd. v. All American Life
Insurance Co., ___ F. Supp. 2d ___, 2003 WL 22232840 *3 (N.D.
Ill. Sept. 22, 2003).  No statements nor any exhibits will be
stricken.  However, the objections will be considered and, to the
extent an assertion or evidentiary exhibit is inappropriate, it
will not be credited.

        The parties are not in dispute as to the construction of
certain basic provisions of the Plans.  The SAD Plan provides for
two types of benefits.  AD Benefits are awarded for a disability
caused by injury or illness arising out of employment while SD
Benefits are awarded for a disability resulting from other
causes.  For both, disability is defined as a "sickness or

injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job . . . or any other job assigned by the Company or Participating Company for which the Eligible Employee is qualified with or without reasonable accommodation (as determined by the Company or its delegate)."

For AD Benefits for an accidental injury, the arising out of employment requirement is defined as follows:

> Accidental injuries shall be considered as arising out of, and in the course of employment, only where the injury has resulted solely from an accident during and in direct connection with the performance of duties to which the Eligible Employee is assigned by the Company or a Participating Company or which he or she is directed to perform by proper Company or Participating Company authority or if voluntarily protecting the Company's or Participating Company's property or interests. There must be a clear and well established history of the cause and circumstances of the injury that renders the Eligible Employee Disabled.

The parties disagree as to the application of this provision to plaintiff's fall in the washroom.

AD Benefits may continue for as long as the Plan participant meets the definition of disability. SD Benefits are limited to 52 weeks after which the LTD Plan provides LTD benefits for those who have exhausted their SD benefits and meet the definition of long term disability. Both the AD and SD

Benefits are reduced by any Worker's Compensation payments that the employee may be receiving. Another difference between AD and SD Benefits is the period of full pay. For an employee with plaintiff's length of service, AD Benefits for the first 13 weeks are at full pay whereas, for SD Benefits, only the first four weeks are at full pay. For both types of Benefits, the remaining weeks are paid at half pay. Worker's Compensation is equivalent to two-thirds of full pay. Thus, once the initial weeks of full pay run out, an employee who is receiving Worker's Compensation receives no additional monies if also qualified for AD or SD Benefits.

The LTD Plan provides benefits only after the employee's 52 weeks of SD Benefits have been exhausted. Unlike the SAD Plan, the LTD Plan's definition of disability is not based on the inability to perform the employee's particular job position, but instead the inability to perform any work for which the employee is qualified. To be disabled under the terms of the LTD Plan, the employee must be disabled from "engaging in any occupation or employment (with reasonable accommodation as determined by the Company or its delegate), for which the Eligible Employee is qualified, or may reasonably become qualified, based on training, education or experience."

Like the SAD Plan, the LTD Plan requires "objective medical documentation" of the disability. It is also provided

that: "A Disabled Eligible Employee will not be entitled to benefits if he or she declines to submit to such examination made by a physician chosen by the Committee, as the Company may deem necessary to ascertain the Eligible Employee's condition."

As a customer service representative, plaintiff worked at a computer wearing a telephone headset. In order to log in and begin taking calls, plaintiff first had to boot up her computer, which took a few minutes. It was plaintiff's usual practice to arrive at work a few minutes before her scheduled starting time, turn on the computer, and go to the washroom. After returning from the washroom, the computer would generally have completed booting up. Plaintiff would then log in and begin taking calls. On October 27, 1999, plaintiff began following her usual practice. However, while in the washroom, she slipped on water and injured herself. Plaintiff had begun booting up, but had not logged in before the fall. Shortly after the fall, plaintiff departed from work. Plaintiff was off work until January 2000. In January 2000, plaintiff returned to work and continued working until July 31, 2000. Plaintiff did not work thereafter and contends her inability to work resulted from the October 1999 fall. It is benefits for August 1, 2000 and thereafter that are the subject of the present lawsuit.

Pointing to work notes of case managers assigned to her claim in October and November 1999, plaintiff contends she was placed on AD. However, assuming the work notes are admissible business records or admissible as an admission of an agent of the SAD Plan, the work notes do not show that plaintiff was placed on AD. Instead, the notes initially indicate that a claim would be submitted for AD Benefits. However, the claims manager subsequently indicated that it was questionable whether this accident qualified for AD Benefits and later indicated that more medical information was needed to make a determination. These notes concern the work plaintiff missed in late 1999, not directly any claim for the period after July 31, 2000 that is the subject of the present litigation. However, even after plaintiff returned to work in January 2000, the claim continued to be considered because there was continuing medical treatment. The notes are clear that the claims managers considered the claim to be one for AD Benefits, SD Benefits, and/or Worker's Compensation.

In August 2000, when plaintiff again began missing work, a new case manager was assigned to plaintiff's claim. Una Prezell, R.N.,[1] was the SAD Plan designee for making the initial

---

[1]By the time of her deposition for this case, Prezell was known as Una Betti.

determination as to plaintiff's eligibility for benefits.
Prezell eventually determined that plaintiff would be eligible
for SD Benefits. She determined that plaintiff was not eligible
for AD benefits because an injury in the washroom was not an
injury sustained in direct connection with the performance of a
job duty. There is no evidence conclusively establishing that
Prezell notified plaintiff that she had determined plaintiff was
not eligible for AD Benefits nor is there any evidence
conclusively establishing that plaintiff was notified of her
right to appeal. Though Prezell testified that the usual
practice was to send written notice of the denial of a claim, no
copy of the notice is contained in the administrative file nor is
there any notation of such notice being sent. On the SAD Plan's
summary judgment motion, it must be taken as true that plaintiff
did not receive the usual notice. Additionally, Prezell's notes
show that she considered plaintiff's possible eligibility for AD
Benefits.

Plaintiff did receive 52 weeks of SD Benefits, though all
but four weeks were entirely offset by the higher Worker's
Compensation benefits plaintiff was receiving. Some of the
checks plaintiff received did have notations of "sick" or
"sickness" and some had notations of "workmen's comp." When
plaintiff questioned payroll about the notations and changes in

withholding, she was never provided a clear response as to the distinctions. Plaintiff had no clear information as to the type of benefits she had been receiving until disclosures were made to her attorney during discovery in the present case, which was well after her 52-week period for SD Benefits had expired. Plaintiff did not administratively appeal any AD determination that was made by Prezell.

In May 2001, plaintiff received a letter notifying her that her SAD Benefits[2] would expire August 5, 2001 and advising her to apply for LTD Benefits for the period thereafter. In June 2001, plaintiff completed the forms that were provided. Nina Bradley was assigned to be the case manager for the LTD claim. She had access to the Worker's Compensation and SAD files as well, including the medical records in those files. Bradley reviewed a work status report by Dr. Charles Slack that contained a diagnosis of persistent thoracic and low back pain. A December 23, 2000 report by Dr. Slack stated plaintiff "should remain temporarily totally disabled from her work in order to

_____

[2]The letter did not indicate whether the SAD Benefits were AD or SD Benefits. Moreover, plaintiff's attorney responded to this letter by noting that she was receiving Worker's Compensation benefits, not SAD Benefits, which is further indication that plaintiff had never been informed that a determination had been made that she qualified for SD Benefits and not AD Benefits.

obtain pain control and further evaluation of her condition and further treatment." He also recommended an MRI, which subsequently found two herniated cervical discs. Dr. Slack also recommended consultation with one of a number of suggested neurosurgeons and plaintiff selected Dr. Martin Luken.

On February 14, 2001, Dr. Luken examined plaintiff. In his report, Dr. Luken states in part:

> Finally, I reassured Ms. Sisto that in my view she very likely is capable of some sort of gainful employment, and I deferred comment regarding the extent of her disability to a formal work capacity evaluation. Such an investigation would also provide some measure of objective assessment of any secondary gain [sic] issues at work in Ms. Sisto's case, issues, which any thoughtful assessment of the circumstances of our consultative visit would suggest are formidable.

Consistent with recommendations of Drs. Slack and Luken, on March 7, 2001, plaintiff was evaluated by the Center for Pain Studies of the Rehabilitation Institute of Chicago. Psychologist Patricia Cole, Ph.D., opined that plaintiff's "pain condition appears to be maintained, at least in part, by financial disincentives to return to functioning and by family pressure not to risk reinjury, as well as very solicitous reactions on the part of her daughter and probably other family and friends." Cole opined that plaintiff was a "fair candidate" for a pain

management program that might increase her functional level and/or decrease her pain. Cole also found a serious impairment of plaintiff's social and occupational functioning. The attending physician for the pain evaluation, P. Michelle Muellner, M.D., stated plaintiff would:

> benefit from an interdisciplinary chronic pain rehabilitation program if she can understand and accept realistic rehabilitation goals of some decrease in pain, increased function, a return to work, decreased dependence on the medical system, an improved medical regime and achieving maximum medical improvement for this diagnosis.

Bradley informed plaintiff that she should schedule her participation in such a program, but plaintiff's attorney responded that doctors had found cervical problems that were a source of the pain and had recommended surgery and therefore plaintiff was not an appropriate candidate for such a program. Some of these medical evaluations were subsequent to Dr. Luken's recommendation for a pain evaluation and at least some of the recommendations for surgery were provided to Bradley and are in the administrative record.

Bradley twice scheduled plaintiff for appointments with a physiatrist to perform a functional capacity evaluation. The letters sent to plaintiff's attorney referred to these appointments as independent medical examinations and did not

specify that functional capacity was the primary concern. Plaintiff did not appear at either appointment, but her attorney did speak to Bradley about them. According to the attorney's affidavit, which is part of the administrative record, an agreement was reached to supply reports from other physicians instead. All that was submitted, however, was a short two-paragraph letter dated August 8, 2001 from plaintiff's treating internist, Dr. Elisabeth Wallner. Dr. Wallner stated that she was treating plaintiff for hyperthyroidism, diabetes, and obesity and was still attempting to adjust her medical regimen. Dr. Wallner also noted that others are treating plaintiff's disc and carpal tunnel problems. Dr. Wallner stated that plaintiff "continues to complain of inability to remain in sitting position for longer than 1 hour and inability to write or manipulate objects for longer than 1 hour, due to persistent pain." Dr. Wallner does not note whether she found those subjective complaints to be credible nor whether they are supported by any objective findings.

In a letter dated September 14, 2001, Bradley set forth the grounds for denying LTD Benefits. She listed medical evidence that conclusorily stated plaintiff was disabled from working. She also referred to medical evidence establishing plaintiff had carpal tunnel syndrome, disc problems, and other

medical problems. However, Bradley also found that each of these reports failed to adequately set forth the functional limitations caused by these medical conditions. She stated that she was therefore unable to get a "clear picture" of plaintiff's functional capacity. She also stated that plaintiff failed to appear for the two scheduled appointments and noted the Plan provision that Benefits may be denied for failure to submit to such examinations. The letter also advised plaintiff of her appeal rights and right to seek reconsideration based on submitting additional medical evidence.

Plaintiff appealed and the LTD Plan's letter acknowledging the appeal advised her (through her attorney) that this would be her final opportunity to submit additional medical evidence. The letter provided that the deadline for submission of additional materials would be November 6, 2001. On November 14, 2001, plaintiff did orally report that she had had neck surgery on November 5, 2001. She did not submit any related medical evidence. Plaintiff's attorney timely submitted handwritten notes that plaintiff had been found to be qualified for social security disability benefits.

Allison Langerman, R.N., was the Appeal Specialist assigned to plaintiff's claim. Langerman requested an independent review of the medical records, which was conducted by

Perspective Consulting, Inc. An orthopedic surgeon conducted the review and concluded "that there are no supporting objective findings of medical documentation as to why the patient could not perform a sedentary job as of 8/6/01." Langerman also requested that Perspective send the file to an internist. The internist concluded that the objective documentation did not support that any particular condition prevented plaintiff from performing the work of the position to which she had been assigned. These reports are in the administrative record and Langerman states in her affidavit that she considered them. However, they are not mentioned in Langerman's decision.

In a letter dated December 6, 2001, Langerman denied the appeal. She concluded that the medical evidence established that plaintiff had certain medical conditions, but that the evidence did not establish her current functional limitations, restrictions, and work capacity. It was also noted that plaintiff failed to appear for the functional capacity appointments.

The SAD Plan's denial of AD Benefits will be considered first. If plaintiff was entitled to AD Benefits, she would be entitled to payments equal to an additional nine weeks of the differential between her full pay and Worker's Compensation benefits. Determining that her payments should have been AD

Benefits, however, would also preclude any possibility of qualifying for LTD Benefits since LTD Benefits are only available after an employee exhausts 52 weeks of SD Benefits.

Ordinarily, before bringing an ERISA lawsuit regarding the denial of plan benefits, a plan participant must first exhaust her administrative remedies. Gallegos v. Mt. Sinai Medical Center, 210 F.3d 803, 807-08 (7th Cir.), cert. denied, 531 U.S. 827 (2000); Bahnaman, 219 F. Supp. 2d at 925. Claims may be waived if not first presented in administrative proceedings. Lindemann v. Mobil Oil Corp., 79 F.3d 647, 649 (7th Cir. 1996); Bahnaman, 219 F. Supp. 2d at 925. A plan participant need only exhaust claims, not theories or issues. As long as she has presented the claim to the administrative body, the participant may raise in court any theory or issue that is based on evidence or information that was before the administrative body. Bahnaman, 219 F. Supp. 2d at 925.

ERISA requires that all benefit plans:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  See also 29 C.F.R. § 2560.502-1 et seq.
Consistent with the statutory and regulatory requirements, the
SAD Plan provides that participants are to receive written notice
of the denial of a claim for benefits which is to specify the
reason for denial, the pertinent Plan provisions, a description
and explanation of any additional materials that may be needed to
perfect the claim, and a description of appeal procedures.  SAD
Plan § 6.2(d).  The SAD Plan provides for appeals of the initial
determination, which are to be initiated by a written request for
review submitted within 60 days of the participant's receipt of
the notice of denial.  Id. § 6.2(e).

Here, plaintiff initiated the claim procedures and the
case manager responsible for the initial determination (Prezell)
recognized that this included a possible claim for AD Benefits.
Also, the same records that were pertinent to SD Benefits and
Worker's Compensation were also pertinent to AD Benefits.
Although Prezell subsequently determined that plaintiff did not
qualify for AD Benefits because the injury did not arise from job
duties, she never provided written, or even oral, notice to
plaintiff regarding that determination.  Plaintiff was not
clearly informed that she was receiving a combination of SD
Benefits and Worker's Compensation benefits.  When an ERISA

benefit plan either fails to provide a participant notice of the
denial of a claim or fails to provide adequately specific notice
of the denial, any defense based on exhaustion is waived. <u>See</u>
<u>Dishman v. UNUM Life Insurance Co. of America</u>, 269 F.3d 974,
984-85 (9th Cir. 2001); <u>HCA Health Services of Georgia, Inc. v.</u>
<u>Employers Health Insurance Co.</u>, 240 F.3d 982, 992 (11th Cir.
2001); <u>Grodesky v. Lucent Technologies, Inc.</u>, 2003 WL 174186 *4-5
(N.D. Ill. Jan. 27, 2003); <u>Casey v. Uddeholm Corp.</u>, 1992 WL
249606 *4 (N.D. Ill. Sept. 25, 1992); <u>SunTrust Bank v. Aetna Life</u>
<u>Insurance Co.</u>, 251 F. Supp. 2d 1282, 1289-90 (E.D. Va. 2003).
<u>See also</u> <u>Ross v. Diversified Benefit Plans, Inc.</u>, 881 F. Supp.
331, 334-35 (N.D. Ill. 1995).[3] Plaintiff's AD claim against the
SAD Plan is not barred by failure to exhaust administrative
remedies.

Although plaintiff's AD claim against the SAD Plan
survives the procedural objections, it fails on its merits. In
order for plaintiff to succeed on her claim for AD Benefits, the
SAD Plan's determination that a fall in the washroom was not "an

---

[3]<u>Ross</u> holds that, absent an adequate showing as to the
futility of further review, the failure to provide adequate
notice of the denial of benefits only entitled the participant to
a remand requiring that the plan review the participant's claim,
not that exhaustion be excused and the merits considered in a
lawsuit. <u>Id.</u>, 881 F. Supp. at 335 n.3. Other cases, however,
hold that inadequate notice excuses exhaustion. <u>See</u> <u>Dishman</u>,
<u>supra</u>; <u>Grodesky</u>, <u>supra</u>; <u>Casey</u>, <u>supra</u>; <u>SunTrust</u>, <u>supra</u>.

accident during and in direct connection with the performance of
[job] duties" must be held to be arbitrary and capricious. It
was a reasonable construction of that Plan provision to find that
it applies only to performance of job duties themselves, not time
attending to personal needs while away from one's workstation.
The decision to deny AD Benefits was reasonable even if plaintiff
should be considered to have already started her workday at the
time she fell. Therefore, it is unnecessary to determine whether
plaintiff should have been considered on duty when she first
turned on her computer or not until after she actually logged on
to her computer. The SAD Plan's determination is fully
consistent with the Plan language requiring a <u>direct</u> connection
to job duties. <u>See</u> <u>Recupero v. New England Telephone & Telegraph
Co.</u>, 118 F.3d 820, 838 (1st Cir. 1997) (upholding Plan
determination that identical language did not apply to accident
occurring during coffee break). <u>See also</u> <u>Communication Workers
of America v. NYNEX Corp.</u>, 205 F. Supp. 2d 224 (S.D.N.Y. 2002).
Although Worker's Compensation provisions may cover accidents
that occur while an employee is on a break on work premises,
those determinations are based on statutory provisions with
different language and therefore are not controlling. <u>See</u>
<u>Paterson v. Southwestern Bell Telephone Co.</u>, 411 F. Supp. 79, 87
(E.D. Okla. 1976). The SAD Plan's decision to deny AD Benefits

was not arbitrary and capricious and therefore cannot be overturned.

As to LTD Benefits, plaintiff contends the LTD Plan's decision was arbitrary and capricious in that it (1) accorded too much weight to Dr. Luken's analysis; (2) failed to consider the effects of medications plaintiff was taking; and (3) failed to adequately consider findings of a psychological impairment. As to the failure to appear for the appointments with the physiatrist, plaintiff contends she was never notified that the purpose of the appointments were for determining functional capacity; her attorney made alternative arrangements with Bradley; and the report of Dr. Wallner was a sufficient alternative.

The contention regarding Dr. Luken's analysis is without merit. The decision of the Plan is clear that it considered the entire record. Additionally, Appeal Specialist Langerman requested and considered reports from two independent consultants who also considered and discussed the entire record. Both of those consultants concluded that the medical records did not establish that plaintiff was unable to perform any work. It cannot be found that the LTD Plan unreasonably placed excessive reliance on Dr. Luken's analysis.

For the contention that plaintiff has psychological problems, plaintiff relies on the Rehabilitation Institute's report. The LTD Plan's decision notes that psychological testing was part of the Rehabilitation Institute's evaluation. Although finding some level of psychological impairment, the Rehabilitation Institute still reported that plaintiff was a candidate for a pain management program, a fact that is noted in the LTD Plan's decision. The Rehabilitation Institute materials contain no opinion that the psychological impairment precluded the ability to work. The LTD Plan did not ignore evidence showing plaintiff lacked the ability to work.

As to the effects of medication, plaintiff does not point to any document that was contained in the administrative record. She instead relies on additional materials submitted in response to summary judgment. Such materials cannot be a basis for holding that the LTD Plan acted arbitrarily and capriciously.

The primary reason for finding that plaintiff was not disabled was that the record did not establish her functional capacity and therefore there was no basis for finding that she could not perform any work, including any inability to perform sedentary work. Plaintiff does not point to materials in the administrative record which establish her functional capacity as of August 6, 2001. Thus, there is no basis for finding the LTD

Plan's decision to deny LTD Benefits was arbitrary and capricious. It is unnecessary to reach the alternative ground of failure to appear for the physiatrist appointments. It is noted, though, that the August 8, 2001 letter of Dr. Wallner does not establish plaintiff's functional capacity and therefore could reasonably be found to be an inadequate substitute for the requested examination by a physiatrist.

For the foregoing reasons, defendants' summary judgment motion will be granted and plaintiff's cause of action will be dismissed.

IT IS THEREFORE ORDERED that defendants' motion to strike [84] is granted in part and denied in part. Defendants' motion for summary judgment [62] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 30 , 2003

- 23 -